UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRUNO OLIVEIRA,<br>ALEXANDER NUNEZ; and,<br>JOSE RIVERA,<br><br>    Plaintiffs,<br>v.<br><br>VECNA TECHNOLOGIES, INC.,<br><br>    Defendant. | CIVIL ACTION NO: 1:20-CV-11365 |

## COMPLAINT AND JURY DEMAND

Plaintiffs, Bruno Oliveira, Alexander Nunez, and Jose Rivera, bring claims against Defendant, Vecna Technologies, Inc. for: (1) Employment discrimination based on race/national origin; (2) Hostile work environment and (3) Retaliation in employment, in violation of Title VII, 42 U.S.C. § 2000e et seq. ("Title VII") and Mass. Gen. Law Ch. 151B. This case has properly been removed from the Massachusetts Commission Against Discrimination pursuant to Mass. Gen. L. Ch. 151B § 9.[1] The EEOC has also issued Right to Sue Notices for all plaintiffs.

## PARTIES

1. Plaintiff, Bruno Oliveira ("Oliveira") is an individual residing at 7 Kenwood Street, North Billerica, Massachusetts. At all relevant times Oliveira was the Facilities Department

---

[1] Bruno Oliveira v. Vecna Technologies Inc.: MCAD Docket No. 19BEM01388; EEOC Charge No. 16C-2019-01674
 Alexander Nunez: v. Vecna Technologies Inc.: MCAD Docket No. 19BEM01389; EEOC Charge No. 16C-2019-01675
 Jose Rivera v. Vecna Technologies Inc.: MCAD Docket No. 19BEM01390; EEOC Charge No. 16C-2019-01676

1

Manager at Vecna Technologies, Inc. He is Brazilian and immigrated to the United States from Brazil.

2. Plaintiff, Alexander Nunez ("Nunez") is an individual residing at 81 East Berkeley Street, # 2, Boston, Massachusetts. At all relevant times, Nunez was a Facilities Associate at Vecna Technologies Inc. He is Dominican and immigrated to the United States from the Dominican Republic.

3. Plaintiff, Jose Rivera ("Rivera") is an individual residing at 81 Orton Marotta Way, # 1058, South Boston, Massachusetts. At all relevant times, Rivera was a Facilities Associate at Vecna Technologies Inc. He is Salvadoran and immigrated to the United States from El Salvador.

4. Defendant, Vecna Technologies, Inc., ("Vecna") is a Delaware corporation with a usual place of business at 36 Cambridgepark Drive, Cambridge, Massachusetts. Upon information and belief, and all relevant times, Vecna was a technology company and federal contractor in Cambridge MA, and an employer of about 200 people.

## JURISDICTION AND VENUE

5. This Court has jurisdiction and venue over this action under 28 U.S.C. § 1331, 28 U.S.C. §1367, and 28 U.S.C. §1391. The wrongs alleged in this complaint occurred within the District of Massachusetts.

6. This court has supplemental jurisdiction over the claims brought under Mass. Gen. Laws Ch. 151B as granted by 28 U.S.C. §1367(a) because the claims under the state law are so related to the federal claims brought herein in that they form the same case or controversy under Article III of the U.S. Constitution.

## SUMMARY OVERVIEW

7. This case arises in the context of demonstrated racial animus, including physical intimidation, duly reported complaints about the racial animus and ultimate termination based on the pretext of reduction in force.

8. Vecna employee, John Mattero ("Mattero") is Caucasian, and was part of the Facilities Department at Vecna. He worked alongside the Plaintiffs and was supervised by Oliviera. At all relevant times he used hostile and vile language toward Plaintiffs, Nunez and Rivera, including, without limitation, stating **"immigrants come here to live with 'us' and take 'our jobs,' some of them are criminals; it's good that Trump will deport you f******g immigrants."** Mattero also physically intimidated Plaintiff Nunez.

9. Oliveira, on behalf of himself and the other Plaintiffs, asked Vecna to fire Mattero because of his continued racial animus toward the Plaintiffs. Vecna's human resources department, led by Marisa Picca ("Picca"), initially proposed to transfer Mattero to a Caucasian supervisor rather than have him continue to be supervised by Plaintiff Oliveira. **This would have created a segregated facilities department. Whites on one team, individuals of color on another.** Unsurprisingly, and horrified at the suggestion, Oliveira objected to Picca's described solution. This was discrimination as it related to Oliveira and he specifically expressed to Picca that her solution was discriminatory and improper. Her proposal signaled to Oliveira (and would signal to the entire company) that he could not supervise Mattero because he is a person of color and Mattero is white. This constituted a threat by Picca as to Oliveira's status of employment. After this, Vecna did nothing to address Mattero's racial animus until Plaintiffs were terminated.

10. In or around February 2018, Mattero was put a 60-day PIP, which was unrelated to his racial animus. His PIP did not address his racial animus. On or about April 3, 2018, (during Mattero's 60-day PIP period), Mattero went out on disability leave. He was scheduled to return on or around July 3, 2018. Around this time, Oliviera warned Picca that Mattero was coming back from leave but that Nunez and Rivera were still afraid to work with him. Vecna, having had its initial solution to segregate the department fail, and still refusing to terminate or discipline Mattero for his racial animus, had to do something--and quickly. Vecna's solution was to silence and retaliate against the Plaintiffs by terminating the entire Facilities Department with no notice. The notice was given to Plaintiffs on or around July 6, 2018—just 3 days after Mattero was scheduled to return to work. Termination was effective July 10, 2018.

### SPECIFIC INSTANCES OF RACIAL ANIMUS AND REPORTS OF RACIAL ANIMUS TO PICCA

11. As set forth below, at all relevant times, Mattero displayed racial animus and negative bias against the Plaintiffs, Rivera and Nunez, and created a hostile work environment. Vecna did nothing despite knowing about the Mattero's words and behavior. Specifically:

   a. **August 2016:** Mattero told Nunez that he should seek employment elsewhere because Vecna was running out of funds and would be "going under" soon. Mattero told Nunez this on multiple occasions over several months.

   b. **October 2016:** Nunez began actively seeking a new job applying to several companies. Raytheon, one of the companies Nunez applied to, began the interview process with him.

   c. **November 2016:** After Nunez's interview process was completed with Raytheon, they called Oliveira for a recommendation. Oliveira was surprised to hear that Nunez was looking to leave Vecna. Oliveira asked Nunez why he was applying to other jobs. Nunez explained that Mattero had been telling him that Vecna was out of funds and

4

would be "going under" soon. Oliveira told Nunez that was not true. Olivera gave Mattero a written warning using "Small Improvements" and reported the issue to Picca. After Mattero received the warning, he began to increase his hostility toward Plaintiffs.

d. For example, soon after Mattero received the warning, Mattero said to Rivera when they were both in the facilities shop: *"Good, Trump won the elections. You people come here, take our jobs and live near us. Some of you are criminals and come here to kill our people."* At that time, Ryan Clooney (a shipping/receiving clerk) was walking into the facilities shop and heard Mattero say this. Clooney made a face in shock. These statements by Mattero were not initially reported to Picca because Rivera and was afraid of making Mattero angry and risking further verbal abuse.

e. **December 2016:** Steve Batalis, an employee in the machine shop who Nunez had a good relationship with, texted Nunez wishing him a Merry Christmas and called Nunez " Haiti" in the text message. Nunez was puzzled by this, especially because Batalis knew that Nunez was not Haitian. (Nunez found out later that everyone referred to him as "Haiti" because Mattero always did.)

f. **February 14, 2017:** On Valentine's day, Nunez bought four dozen roses for his female co-workers and chocolate for his male coworkers with his own money to show his appreciation for his fellow employees. When Mattero saw that Nunez was walking around the company giving people these small tokens of appreciation, Mattero approached Nunez and said: *"you are fucking ridiculous Haiti."* With this, Nunez realized the reason people were calling him "Haiti" was because Mattero was calling him that behind his back.

g. **May 2017**: Nunez was cleaning the kitchen hallway in building 36 when Mattero approached him and said: *"You fucking immigrant, I hope Trump deports all the fucking immigrants out of this country."* Nunez reported this to Oliveira. Nunez told Oliveira he was scared if Mattero were to get in trouble again because of how angry Mattero was when Mattero got in trouble for telling Nunez to look for another job. Despite the fact that Nunez expressed fear, **Oliveira reported** the *"You fucking immigrant. I hope Trump deports all the fucking immigrants out this country,"* **remark to Picca in person, and he also at that time informed Picca about the all the hostile remarks Mattero made to both Nunez and Rivera.** Picca was thus aware of Mattero's demonstrated racial animus and was, or should have been, aware that Mattero was creating a hostile work environment for Plaintiffs. She did nothing.

h. **May 12, 2017**: Nunez gave flowers to his female coworkers for Mother's Day. When Mattero saw this, he told Nunez: *"this is fucking stupid Haiti."* Nunez did not report it to anyone at this time; again, out of fear that is would just further anger Mattero.

i. **June 16, 2017**: Nunez brought candy to the male employees for Father's Day, and he left a lollipop on Mattero's desk as a "peace offering." When Mattero saw it, he approached Nunez and threw the lollipop at his feet and said: *"I don't want this, what you're doing is ridiculous."* Again, Nunez did not, at this point, report it out of fear of further retaliation from Mattero.

j. **August 2017**: Nunez was mopping the floors in the facilities shop early one morning. There was a soccer ball on the floor in Nunez's way. As Nunez bent down to pick up the ball, Mattero walked by and he (Mattero) kicked the ball off Nunez's hand so hard that it bounced off the wall and nearly hit Nunez in the face. **Nunez reported this to**

**Oliveira who in turn reported it Picca.** A day or so later, Oliveira and Picca tried to pull the footage from the camera in the facilities shop but the footage for that day was deleted from the video server which was kept in the server room. Oliveira pulled the "RFID" badge reader scan report for the server room to find out who could have deleted the footage. On the report the only person that had gone into the server room that day was Mattero. **Oliveira reported his findings on the badge scan report to Picca. Certainly, given this incident, Picca was aware of Mattero's hostile behavior.**

k. **January 2018: Nunez finally got up the nerve to tell Picca *everything* Mattero had said to him and Rivera during the past, approximately, 18 months, including, that Mattero kept referring to Nunez as "Haiti." Nunez told Picca that he believed Mattero was saying this because of his skin color. He also told Picca that he and Rivera were afraid of Mattero.** Nunez hoped that Picca would do something about the hostility coming from Mattero, but she did nothing.

l. **April 2018: Oliveira emailed Picca (at her request) and provided her information about Mattero's racial animus toward immigrants. He also informed her that other instances were recorded in "Small Improvements."**

## VECNA FAILS TO RESPOND TO PLAINTIFFS' COMPLAINTS AND INSTEAD SEEKS TO SEGREGATE THE DEPARTMENT

12. In or around February of 2018, Mattero was insubordinate to Oliveira by not following Oliveira's instructions regrading a snowstorm and related snow plowing. Oliveira reported Mattero's insubordination to Picca both in person and through "Small Improvements." Picca's solution at that time was to have Mattero report to the Machine Shop manager who is white. He expressed to Picca that her solution was discriminatory and improper in that her solution signaled to Oliveira and would signal to the entire company that Oliveira could not

7

supervise Mattero because Oliveira is a person of color. This constituted a threat by Picca as to Oliveira's status of employment.

13. Frustrated by Picca's lack of action, Oliveira spoke with his direct supervisor, Mike Bearman, and asked him in his capacity as his supervisor to intervene. Bearman said he was "working with Picca" on the Mattero issue. Nothing else was said. While it is true that Bearman is also an attorney, Oliveira never sought any, nor received any, legal advice or confidential information from Bearman.

14. On or about February 15, 2018, in connection with Mattero's insubordination (and unrelated to his racial animus), Picca put Mattero on a 60-day Performance Improvement Plan (PIP)—which did not address the reported racial animus exhibited by Mattero. Given Mattero's history of racial animus, Oliviera pressed Picca to terminate Mattero. Ms. Picca told Oliveira there was "nothing [Vecna] can do," because Mattero was a disabled U.S. veteran, who could not be disciplined or fired without an in-depth investigation for gross misconduct, which Vecna steadfastly refused to undertake.

## EVENTS LEADING UP TO AND SURROUNDING PLAINTIFFS' TERMINATION INCLUDING DISPARATE TREATMENT

15. On or about April 3, 2018, during Mattero's 60-day PIP period, Mattero went out on disability leave. He was scheduled to return on or around July 3, 2018. A couple of weeks before his scheduled return, Oliveira reminded Picca that Mattero was due to come back in a couple of weeks from his short-term disability leave, and told her that **"something needed to be done before Mattero came back"** because **"Nunez and Rivera were still afraid to work with Mattero."**

16. Vecna, having had its initial solution to segregate the department re-buffed, and still refusing to terminate Mattero, had to do something quickly so it would no longer receive

complaints about Mattero's racial animus. Vecna's solution was to shut down the complaints by terminating the entire Facilities Department under the guise of cost savings.

17. At precisely around the same time that Oliveira pressed Picca about what was going to be done upon Mattero's return which was imminent, Brian Reeves, who was in charge of operations and who knew about the Mattero problem, sent an email to Mercado Janitorial, marked "Sensitivity: Private," dated June 23, 2018 requesting a meeting. Then on June 28, 2018, Brian Reeves sent another email to Mercado Janitorial stating, "I would like to proceed early July" with the outsourcing of the janitorial function of the Facilities Department. Of course, this was when Mattero was scheduled to return to work (he was scheduled to return July 3, 2018).

18. With Vecna's rushed plan in place, Plaintiffs were informed on or around July 6, 2018, that they were being terminated. Termination was effective as of July 10, 2018.

19. Just before the effective date of the termination, Picca called Oliveira into her office. She told him that Brian Reeves had decided to outsource the Facilities Department as a "cost saving measure." Given the following facts, which facts are alleged without limitation to additional facts that will come to light with discovery, the "cost saving measure" excuse was pretextual:

(a) Brian Reeves made inquiry to Vecna personnel about whether any employees had expressed issues about being discrimination in the company. He was told about the issues surrounding the Facilities Department. He expressed to another Vecna employee that he was fearful of the Massachusetts Commission Against Discrimination and wanted to avoid discrimination claims "at any cost." This was the real reason that Vecna quickly pushed through the plan to jettison the Facilities Department.

9

(b) The timing of the termination and outsourcing of the Facilities Department also demonstrates pretext. Very suddenly, and just as Mattero was scheduled to return to Vecna, Vecna retained Mercado Janitorial.

(c) There were no cost-savings. Mercado is only a janitorial provider. The Facilities Department duties and responsibilities also included landscaping, painting, snow removal, moving equipment, fixing heating and cooling and a host of other things. These services are now, upon information and belief, being provided by additional or other companies and/or individuals. As such, when you do the math and compare apples to apples, it is evident that the reduction in work force/cost savings excuse falls apart and is pretextual.

20. In or around July 10, 2018, Picca asked Oliveira to gather his team (not Mattero) and bring them to her office. Once in her office, she handed Oliveira, Rivera and Nunez severance packages for 3, 3, and 2 weeks of pay respectively in exchange for them signing a document stating they could not take any legal action against Vecna. All three rejected the offer.

21. Picca then directed Nunez and Rivera to immediately gather their belongings and she informed them that she would have to escort them to their belongings and out the door. Nunez asked to say goodbye to everyone, but Picca said no. She even stood at the door as Rivera and Nunez were collecting their belongings out of the storage room. While they were collecting their things, Oliveira was there talking with them and they took a few minutes too long. Picca again said they had to go and hurried them along. Oliveira asked Picca why they could not at least say goodbye, she said it was "standard procedure" to tell people they need to leave immediately and escort them out the door after a layoff. As set forth below, this is not how Mattero was treated.

22. Mattero came back a few days later to speak with Picca, but this time Oliveira was excluded from the conversation. When Mattero went into the Facilities shop to get his things from his desk— Picca was NOT standing at the door watching him and he was allowed to take his time and talk with co-workers.

23. Oliveira remained employed through the end of the month, at reduced, 4-hour shifts, to transition key information to facilities personnel in other Vecna locations.

24. Plaintiffs were given the *opportunity to apply* to the new outsourced janitorial company and Oliveira was offered a receptionist position. These so-called "offers," were viewed by the Plaintiffs as adverse employment actions as they paid less, were not comparable positions, and were nothing short of further humiliation.

## COUNT I
## (Race Discrimination Under Title VII)

25. Plaintiffs re-allege and incorporate herein all allegations contained in the preceding paragraphs as if set forth fully herein.

26. At all relevant times, Plaintiffs were members of a protected class based on race and national origin.

27. Plaintiffs were subjected to different treatment than persons similarly situated, including without limitation the difference in treatment of Mattero who is Caucasian and the Plaintiffs who are all members of a protected class.

28. No other department was targeted for termination, and such termination coincided when Mr. Mattero was scheduled to return to work which was deliberate and intentional.

29. Plaintiffs performed up to Vecna's legitimate job expectations.

30. Plaintiffs suffered an adverse job action.

31. There is a causal connection between their membership in a protected class and the adverse employment action.

32. Plaintiffs were injured and damaged as a direct and proximate result thereof.

33. Plaintiffs herein seek to recover: (a) back pay, (b) front pay, (c) emotional distress damages, (d) punitive damages, (e) attorney's fees, (f) costs, (g) interest, and (h) such other and further relief this Court deems just and proper.

## COUNT II
### (Nunez's and Rivera's Claim For Hostile Work Environment Under TITLE VII)

34. Plaintiffs re-allege and incorporate herein all allegations contained in the preceding paragraphs as if set forth fully herein Plaintiffs reallege.

35. Plaintiffs are members of a protected class.

36. They were at all relevant times subjected to unwelcome racial harassment.

37. The harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive work environment. The harassment was part of an ongoing pattern of discrimination.

38. The racially objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the Plaintiffs in fact did perceive it to be so.

39. Plaintiffs were injured and damaged as a direct and proximate result thereof.

40. Plaintiffs herein seek to recover: (a) back pay, (b) front pay, (c) emotional distress damages, (d) punitive damages, (e) attorney's fees, (f) costs, (g) interest, and (h) such other and further relief as this Court deems just and proper.

## COUNT III
### (Violation of Title VII's Anti-Retaliation Provisions)

41. Plaintiffs re-allege and incorporate herein all allegations contained in the preceding paragraphs as if set forth fully herein Plaintiffs reallege.

42. Plaintiffs reasonably and in good faith believed that Vecna was engaged in wrongful discrimination.

43. Plaintiffs acted reasonably in response to that belief through reasonable acts meant to protest or oppose the discrimination.

44. The Plaintiffs engaged in an activity that is protected by statute; specifically reporting and complaining about the racial animus they suffered while at Vecna.

45. The protected activity caused them to suffer the adverse employment action.

46. Plaintiffs were injured and damaged as a direct and proximate result thereof.

47. Plaintiffs herein seek to recover: (a) back pay, (b) front pay, (c) emotional distress damages, (d) punitive damages, (e) attorney's fees, (f) costs, (g) interest, and (h) such other and further relief this Court deems just and proper.

## Count IV
### (Race Discrimination Under Mass. Law Ch. 151B)

48. Plaintiffs re-allege and incorporate all allegations contained in the preceding paragraphs as if set forth fully herein.

49. At all relevant times, Plaintiffs were members of a protected class based on race and national origin.

50. Plaintiffs were subjected to different treatment than persons similarly situated, including without limitation, the difference in treatment of Mattero who is Caucasian and the Plaintiffs who are all members of a protected class.

51. Plaintiffs performed up to Vecna's legitimate job expectations.

52. Plaintiffs suffered an adverse job action.

53. There is a causal connection between their membership in a protected class and the adverse employment action.

54. Plaintiffs have suffered damages as a result of Defendant's actions.

55. Plaintiffs herein seek to recover: (a) back pay, (b) front pay, (c) emotional distress damages, (d) punitive damages, (e) attorney's fees, (f) costs, (g) interest, and (h) such other and further relief this Court deems just and proper.

### Count V
### (Nunez's and Rivera's Claim For Hostile Work Environment Under Mass. Gen. L. Ch. 151B)

56. Plaintiffs re-allege and incorporate all allegations contained in the preceding paragraphs as if set forth fully herein.

57. Plaintiffs are members of a protected class.

58. They were at all relevant times subjected to unwelcome racial harassment.

59. The harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive work environment. The harassment was part of an ongoing pattern of discrimination.

60. The racially objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the Plaintiffs in fact did perceive it to be so.

61. Plaintiffs were injured and damaged as a direct and proximate result thereof.

62. Plaintiffs herein seek to recover: (a) back pay, (b) front pay, (c) emotional distress damages, (d) punitive damages, (e) attorney's fees, (f) costs, (g) interest, and (h) such other and further relief this Court deems just and proper.

### Count VI
### (Retaliation Under Mass. Gen. L. ch. 151B)

63. Plaintiffs re-allege and incorporate all allegations contained in the preceding paragraphs as if set forth fully herein.

64. Plaintiffs reasonably and in good faith believed that Vecna was engaged in wrongful discrimination.

65. Plaintiffs acted reasonably in response to that belief through reasonable acts meant to protest or oppose the discrimination.

66. Plaintiffs engaged in an activity that is protected by statute; specifically reporting and complaining about the racial animus they suffered while at Vecna.

67. The protected activity caused them to suffer the adverse employment action.

68. Plaintiffs were injured and damaged as a direct and proximate result thereof.

69. Plaintiffs herein seek to recover: (a) back pay, (b) front pay, (c) emotional distress damages, (d) punitive damages, (e) attorney's fees, (f) costs, (g) interest, and (h) such other and further relief this Court deems just and proper.

**WHEREFORE**, Plaintiffs and putative Class members seek judgment for the causes of actions set forth herein and against the Defendant as follows:

A. Award damages to Plaintiffs including without limitation, actual damages, punitive damages, interest, attorneys' fees and costs.

B. Such other and further relief as the court may deem just and proper.

## JURY DEMAND
**The Plaintiffs request a trial by jury on all claims so triable.**

Dated:                                          Respectfully submitted by PLAINTIFFS,
                                                BRUNO OLIEVIRA,
                                                ALEXANDER NUNEZ; and,
                                                JOSE RIVERA,

                                                By their Attorneys,

15

TEMPUS FUGIT LAW, LLC
183 State Street, Floor 2
Boston, MA 02109

---
Gil Schipani, BBO # 675566
*(gil@tflawllc.com)*
Alexis Smith Hamdan BBO #
*(alexis@tflawllc.com)*

617-752-2371